UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GERALD CODERRE,
      Plaintiff,

      v.

CITY OF WALLINGFORD, GABRIEL
GARCIA, SERGEANT DICOCCO,
      Defendants.

No. 3:08-cv-00959 (JAM)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Someone stole a vacuum cleaner from a Kohl's department store in Wallingford,
Connecticut. Defendant Gabriel Garcia, a Wallingford police officer, investigated the incident
and he concluded that plaintiff Gerald Coderre was the culprit. Garcia drafted a warrant
application for plaintiff's arrest, which was approved by his supervisor (co-defendant Sergeant
Mark DiCocco) and by a state court judge. Eventually, state prosecutors decided not to pursue
the case against plaintiff. Thereafter, plaintiff filed this lawsuit against Garcia, DiCocco, and the
City of Wallingford, asserting federal constitutional claims and state law tort claims.

Defendants have moved for summary judgment. For the reasons set forth below, I will
grant defendants' motion. First, the individual defendants are entitled to qualified immunity with
respect to plaintiff's Section 1983 false arrest claim, because there was at least arguable probable
cause to arrest plaintiff. Second, plaintiff's common law false arrest claim is without merit,
because plaintiff was arrested pursuant to a facially valid warrant. Third, plaintiff's *Monell* claim
against the City of Wallingford fails for want of any evidence indicating the existence of a
policy, custom, or practice that was deliberately indifferent to his constitutional rights. Lastly, no

triable fact issues remain to support plaintiff's state law claims for negligent infliction of emotional distress and intentional infliction of emotional distress.[1]

BACKGROUND[2]

On the morning of February 19, 2007, someone stole a vacuum cleaner from a Kohl's store in Wallingford. Defendant Garcia was dispatched to respond following a call to the Wallingford Police Department. At the store, Garcia spoke with Emmit Dowling, one of Kohl's "loss prevention" managers. Dowling explained to Garcia that, upon arriving at the store earlier in the day, he noticed a red Ford pickup truck parked outside the store. A short time later, an individual left the store carrying a vacuum cleaner that had not been paid for, and this person fled in the red pickup truck (although Dowling was not near the front of the store when this happened). Dowling told Garcia that a Kohl's store in Plainville, Connecticut had recently experienced at least three similar shoplifting incidents involving two vehicles: a red pickup truck and a green pickup truck.

Garcia also spoke to Michael Glowasky, a Kohl's loss prevention supervisor. Glowasky was not working at the time of the theft, but he did review video footage from the store's surveillance cameras and prepared a report concerning the incident. The report described the suspect as a white male, approximately five feet eleven inches tall, 170-180 pounds, with a red hat and a brown/black goatee beard. Garcia reviewed the surveillance footage and found that its contents matched Glowasky's account. Glowasky also told Garcia that there had recently been similar shoplifting incidents at the Plainville Kohl's store, and he provided Garcia with a vehicle registration number and a Plainville Police Department case number regarding one of the

---

[1] Although the Court will grant defendants' motion for summary judgment, the Court expresses its appreciation to plaintiff's *pro bono* counsel—Joseph Burns and Thomas Plotkin of the law firm of Rome McGuigan—for their able and diligent representation of plaintiff in this case.

[2] The facts set forth in the section are undisputed or, where disputed, are stated in the light most favorable to plaintiff.

Plainville incidents.

Garcia talked by phone with Sandra Ivan, an employee at the Wallingford Kohl's store who was working the cash register at the time of the vacuum cleaner theft. She remembered a man taking a large box out of the store without paying for it, but she could not describe this individual.

Later that day, Garcia obtained from the Plainville Police Department an "incident report" referencing the case number that Glowasky had provided. *See* Doc. #67-7 at 2–4. The report describes an attempted larceny of a vacuum that occurred two days earlier at the Plainville Kohl's store. According to the incident report, the complainants—apparently two Kohl's employees—"report[ed that] a suspicious man came in the store and left quickly upon seeing loss prevention officers." *Id.* at 3–4. The incident report is on a form document that has codes for different types of involved people: "C" for complainant, "V" for victim, "S" for suspect, etc. Plaintiff's name appeared on the report under the code "O" for "Other." His vehicle—a green GMC pickup truck—is listed as property involved with the incident. A handwritten note on the final page of the report stated that this vehicle is the "suspect's vehicle." *Id.* at 4.

A couple weeks later, Garcia obtained from the Department of Motor Vehicles a color copy of plaintiff's driver's license photograph. Garcia compared plaintiff's driver's license photograph with the surveillance footage from the time of the theft at the Kohl's store in Wallingford. Garcia would later write in a warrant affidavit that "[t]he height, skin complexion, facial features, and facial hair of the subject in the video matched [plaintiff]'s DMV photograph. The person in the video is believed to be [plaintiff]." Doc. #62-2 at 2. This conclusion was based on Garcia's side-by-side comparison, and there is no indication that Garcia ever showed the photograph of plaintiff to Ivan, the Kohl's cashier who saw the vacuum taken from the store, or

to any other person.

Garcia contacted plaintiff's parole officer, Sheila Thompson, and she told Garcia that plaintiff was a suspect in the shoplifting thefts of vacuum cleaners from three other Kohl's stores. Garcia reviewed plaintiff's criminal history, which showed that plaintiff had been convicted of larceny on numerous other occasions. Garcia also attempted to interview plaintiff, but was unable to contact him.

Garcia then drafted an arrest warrant application alleging that there was probable cause to believe that plaintiff had stolen the vacuum cleaner from the Wallingford Kohl's store and that plaintiff had therefore committed larceny. The warrant application generally describes the foregoing events, although it omits any mention of Garcia's conversation with Ivan, the Kohl's cashier who witnessed the shoplifting of the vacuum (but who could not describe the perpetrator). Nor does the affidavit specifically mention the existence of the Plainville Police Department "incident report," which describes a single incident of attempted larceny at the Plainville Kohl's store and lists plaintiff's name and his truck. Instead, Garcia's warrant application simply states that the Plainville Police Department "faxed vehicle information . . . from Plainville Police case number 2007-2094," that the Plainville case was "still under investigation," and that the green pickup truck registered to plaintiff "was used in connection with the Plainville shoplifting incidents." Doc. #62-2 at 2.

Garcia's supervisor, defendant Sergeant Mark DiCocco, reviewed Garcia's arrest warrant application. The application was also reviewed and approved by a state prosecutor, and later signed by a judge of the Connecticut Superior Court.

Plaintiff was eventually served with the arrest warrant in May 2007, but by that time he was already incarcerated on unrelated charges. Plaintiff contended that he was innocent of the

vacuum cleaner larceny and he refused to plead guilty to the crime. Plaintiff contends that the pendency of the charges lengthened his period of confinement. According to an affidavit submitted by plaintiff, "I had to await the dismissal of [the] Wallingford charges without the possibility of bond or consideration for release," because "the [Connecticut] Board of Pardons and Paroles requires that an inmate be cleared of all pending charges before being considered for a new hearing to determine eligibility for release." Doc. #67-3 ¶ 5. Eventually, in March 2008—over 10 months later—state prosecutors decided not to pursue a case against plaintiff, and a Superior Court judge dismissed the charges.

Thereafter, plaintiff filed this lawsuit against Garcia, DiCocco, and the Town of Wallingford. In its initial review order, the Court (Thompson, *J.*) dismissed plaintiff's Sixth Amendment and Eighth Amendment claims. *See* Doc. #5. Defendants have filed a motion for summary judgment on the remaining claims.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S.

5

Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a

'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### Section 1983 False Arrest Claim

Count One of plaintiff's complaint alleges that Garcia and DiCocco subjected him to a

false arrest in violation of the federal constitution pursuant to 42 U.S.C § 1983.[3] It is well

established that the existence of probable cause is a complete defense to a Section 1983 false

arrest claim. *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Russo v. City of

Bridgeport*, 479 F.3d 196, 203–04 (2d Cir. 2007). The probable cause standard is not particularly

demanding. Under both federal and Connecticut law, a police officer has probable cause to arrest

someone if he or she has knowledge or reasonably trustworthy information that would suffice to

warrant a person of reasonable caution in the belief that the person to be arrested has committed

a crime. *See, e.g.*, *Zalaski v. City of Hartford*, 723 F.3d 382, 389–90 (2d Cir. 2013). As the

Supreme Court has oft advised, probable cause is "'a fluid concept—turning on the assessment

of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set

of legal rules.'" *Florida v. Harris*, 133 S. Ct. 1050, 1056 (2013) (quoting *Illinois v. Gates*, 462

U.S. 213, 232 (1983)). All that is required for a finding of probable cause is a fair probability of

criminal conduct in light of the totality of the circumstances. *Id.* at 1055–56.

In this case, plaintiff was arrested pursuant to a warrant.[4] "Ordinarily, an arrest . . .

---

[3] Plaintiff's complaint indicates that the false arrest claim is brought pursuant to both the Fourth Amendment and the Fourteenth Amendment. But in their summary judgment briefing, the parties agree that plaintiff's § 1983 claim is properly analyzed under the Fourth Amendment, and not the Fourteenth Amendment. *See* Doc. #62-1 at 16–17; Doc. #67 at 26–27. Accordingly, I will analyze plaintiff's false arrest claim using Fourth Amendment standards.

[4] It is true that plaintiff was already incarcerated when he was served with the arrest warrant at issue in this case. Several district judges have held that "[a] plaintiff does not state a claim for . . . false arrest . . . under section

pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk v. Rio*, 496 F.3d 139, 155–56 (2d Cir. 2007). But sometimes, as in this case, a plaintiff contends that the warrant affiant included false allegations or omitted important information. In such cases, courts consider whether the allegedly false or omitted information was necessary to the issuing judge's probable cause determination. This is done by hypothesizing a "corrected affidavit"—an affidavit that has been corrected both to rectify any false statements and that includes any omitted information—to determine if the affidavit as corrected would suffice to establish probable cause. *See, e.g.*, *McColley v. Cnty. of Rensselaer,* 740 F.3d 817, 823 (2d Cir. 2014). In addition, a Fourth Amendment claim raised in this factual context will only succeed where the misrepresentations or omissions were "'designed to mislead,' or [were] 'made in reckless disregard of whether [they] would mislead.'" *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003)).

Moreover, police officers are entitled to qualified immunity (and, therefore, a grant of summary judgment in their favor) on a Section 1983 false arrest claim "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Of course, there is a clearly established Fourth Amendment right to be free from false arrest. Accordingly, the qualified immunity inquiry here turns on whether defendants' actions in this factual context were "objectively reasonable." *See, e.g.*, *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577

---

1983 if, at the time of his arrest . . . , he is already in custody or incarcerated on other charges, because there is no deprivation of his or her liberty interests." *Johnson v. Leger*, 2009 WL 902384, at *8 (D. Conn. 2009) (citing cases). In this case, however, it appears—viewing the evidence in the light most favorable to plaintiff—that the arrest warrant may have lengthened plaintiff's term of incarceration, because plaintiff was unable to obtain a parole hearing for several months while the larceny charges were pending. *See* Doc. #81-1 at 14–16. For purposes of this ruling, I assume (without deciding) that continued incarceration due to the denial of a parole hearing would constitute a deprivation of liberty for purposes of the Fourth Amendment and Connecticut common law. Because plaintiff's false arrest claims fail for other reasons, I need not resolve this apparently novel issue.

F.3d 415, 433 (2d Cir. 2009).

Because qualified immunity allows for a deferential review of an officer's conduct, defendants' actions will be deemed objectively reasonable so long as there was *arguable* probable cause to support a criminal charge against plaintiff. *See, e.g.*, *Betts*, 751 F.3d at 83. "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Zalaski*, 723 F.3d at 390 (citation and internal quotation marks omitted).

With this framework in mind, it is apparent that plaintiff's constitutional false arrest claim cannot withstand summary judgment. Plaintiff claims that Garcia misrepresented the following information in the warrant application: (1) the nature of the information received from the Plainville Police Department; (2) the resemblance between plaintiff's DMV photograph and the suspect depicted in the surveillance footage; and (3) the date on which Garcia looked up plaintiff's criminal history. Plaintiff also contends that Garcia omitted from the warrant his conversation with Sandra Ivan, the cashier who witnessed the theft but could not describe the shoplifter's appearance.

I am not persuaded by plaintiff's arguments. There is no plausible inference that any of these alleged misrepresentations or omissions were made deliberately or recklessly. But, even assuming that a fact finder could infer deliberate action or recklessness, defendants would still be entitled to qualified immunity because a "corrected affidavit"—correcting any misrepresentations and including omitted information—would have set forth facts demonstrating arguable probable cause.

It is true that the warrant application's description of the information obtained from the Plainville Police Department is not a model of clarity. Garcia's warrant application does not specifically mention the Plainville "incident report" at all. The warrant application does state that the Plainville Police Department faxed information concerning a green pickup truck registered to plaintiff, which was "used in connection with the Plainville shoplifting incidents." Doc. #62-2 at 2. This information could lead the reader to the erroneous conclusion that the Plainville Police Department provided information concerning multiple incidents. In the preceding sentence, however, Garcia wrote that the "the Plainville case was still under investigation." *Ibid.* The use of the singular word "case" (as opposed to "cases") suggests that the records from Plainville concerned just one incident. And nowhere does the warrant application clarify that the information from the Plainville Police Department describes an attempted—not completed—larceny. As this discussion demonstrates, the warrant application's description of the information obtained from the Plainville Police Department is confusing and incomplete, although there is no plausible inference that the affiant sought to intentionally mislead the reader.

Plaintiff also takes issue with Garcia's statement in the warrant application that "[t]he height, skin complexion, facial features, and facial hair of the subject in the [Kohl's store surveillance] video matched [plaintiff]'s DMV photograph." Doc. #62-2 at 2. Notwithstanding plaintiff's arguments, Garcia's statement finds ample support in the record. Having independently reviewed both the original VHS tape of the surveillance footage as well as a color copy of plaintiff's DMV photograph, I am satisfied that Garcia's conclusion about the similarity between the two individuals was—at the very least—objectively reasonable.[5] Both the video and

---

[5] At the summary judgment stage, a court may rely on "a videotape [in the record] capturing the events in question" where, as here, "[t]here are no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

the photograph depict a white male of approximately the same age, height, and weight. Plaintiff and the thief in the video both have overwhelmingly similar goatee beards and otherwise share nearly identical facial features. They look like the same person to me. A reasonable officer could have believed that plaintiff was the same person shown in the surveillance video, and stated this to be so in a warrant application.

And even if Garcia got it wrong, that does not mean he was not reasonable. "It is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990).

Plaintiff also contends that defendant misrepresented the date on which he reviewed plaintiff's criminal history, which revealed numerous prior larceny convictions. But I cannot see how the particular date on which Garcia learned of plaintiff's criminal history has any material bearing on the probable cause determination.[6]

Finally, plaintiff contends that Garcia's warrant application contained an omission: any mention of his telephone conversation with Sandra Ivan, the Kohl's cashier who witnessed the vacuum theft but could not remember a description of the perpetrator. While this information

---

[6] Nor is there evidence to support plaintiff's claim of a misrepresentation about the date. In his warrant application, Garcia states that he reviewed plaintiff's criminal history on March 12, 2007, approximately three weeks after he first identified plaintiff as a suspect in the case. According to plaintiff, this is improbable "[g]iven the sheer unlikelihood that a police officer would wait three weeks to run his sole suspect's criminal history after identifying him, all the while continuing the investigation." Doc. #67 at 21. I decline to make such an inference. Figuring out who stole a vacuum cleaner from a department store can hardly be described as a law enforcement inquest of the highest order, and it is unsurprising that Garcia had matters which were more important than investigating this particular case. It is not surprising that Garcia could not recall in his deposition the particular date when he reviewed plaintiff's criminal history, given that the deposition occurred more than three years after his investigation ended.

was certainly worth including in the warrant, it cannot be said that this omission was critical to the probable cause finding or even that it cut against the existence of probable cause. *See McColley*, 740 F.3d at 823 (noting that "[w]hile the law does not demand that an officer applying for a warrant volunteer every fact that arguably cuts against the existence of probable cause, he must not omit circumstances that are critical to its evaluation") (internal quotation marks and citation omitted). And although a better procedure would likely have been for Garcia to show Ivan a photograph of plaintiff as part of a photographic lineup, there is no constitutional requirement that a police officer utilize any specific investigative methods.

A hypothetical "corrected" warrant affidavit—setting forth all the details about the Plainville incident report and noting that Ivan witnessed the crime but could not remember a description of the shoplifter—would easily support a finding of arguable probable cause. In view of the video surveillance footage showing a man who looks very similar to plaintiff as well as the information from the Kohl's store employees and plaintiff's parole officer, it was objectively reasonable for Garcia and DiCocco to conclude that there was a fair probability that plaintiff was the man who shoplifted the vacuum cleaner.[7] Because there was at least arguable probable cause to support the larceny charges against plaintiff, I will grant defendants' motion for summary judgment as to the Section 1983 false arrest claim on the ground of qualified immunity.

### Connecticut State Law False Arrest Claim

Count Two of the complaint alleges a claim of false arrest claim under Connecticut common law.[8] Under Connecticut law, false arrest is defined as "the unlawful restraint by one

---

[7] Defendants also argue that plaintiff cannot maintain a § 1983 claim against DiCocco in view of DiCocco's limited personal involvement in the investigation. I need not—and do not—address this argument in view of the alternative grounds for granting summary judgment in defendants' favor.

[8] Notwithstanding the dismissal of plaintiff's federal claims, it is appropriate for this Court to exercise supplemental jurisdiction over plaintiff's state law claims because this case has progressed all the way through discovery, the facts relevant to the state law claims are the same as those relevant to the federal law claims, and the claims involve settled principles of Connecticut law. *See, e.g., Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d

person of the physical liberty of another." *Nodoushani v. S. Connecticut State Univ.*, 152 Conn. App. 84, 92, 95 A.3d 1248 (2014) (emphasis omitted) (quoting *Lo Sacco v. Young*, 20 Conn. App. 6, 19, 564 A.2d 610 (1989)). Unlike for a federal Section 1983 false arrest claim, federal principles of qualified immunity do not apply to a Connecticut common law false arrest claim. *See Schnabel v. Tyler*, 230 Conn. 735, 742, 646 A.2d 152 (1994); *see also Fleming v. City of Bridgeport*, 284 Conn. 502, 531, 935 A.2d 126 (2007) (discussing separate test of governmental immunity for discretionary acts that may protect municipal officers from common law liability).

Nevertheless, there is no need to consider the issue of any immunity, because it is clear that a common law false arrest claim may not succeed in the first place unless the arrest was "wholly unlawful." *Lo Sacco*, 20 Conn. App. at 19 (quoting *McGann v. Allen*, 105 Conn. 177, 188, 134 A. 810 (1926)). When an arrest is effectuated pursuant to a warrant, a false arrest claim will not succeed if the warrant was facially valid. *See Outlaw v. City of Meriden*, 43 Conn. App. 387, 392–93, 682 A.2d 1112 (1996) (noting that the Connecticut Supreme Court announced this rule in *Luddington v. Peck*, 2 Conn. 700 (1818), and that courts have followed this rule for nearly 180 years); *see also Russo*, 479 F.3d at 204 (same). A warrant is facially valid where "it appears to be valid in the judgment of an ordinarily intelligent and informed layman," and "'there is [no] clear absence of jurisdiction on the part of the court or magistrate issuing the process.'" *Outlaw*, 43 Conn. App. at 393 (quoting *Aetna Ins. Co. v. Blumenthal*, 129 Conn. 545, 553, 29 A.2d 751 (1943)).[9]

---

Cir. 2003) (noting approval of exercise of supplemental jurisdiction where, "by the time the federal claims were dismissed, discovery had been completed, the court had decided three dispositive motions, and the case was ready for trial, and where the state-law claims involved only settled principles, rather than legal questions that were novel").

[9] Plaintiff has not alleged a claim of malicious prosecution, which has different elements than a claim of false arrest. *See Lo Sacco*, 20 Conn. App. at 19–20.

Here, it is evident that the arrest warrant was facially valid. There is no obvious irregularity on the face of the warrant. Nor is there any indication that the Superior Court judge who signed the warrant lacked jurisdiction. Moreover, plaintiff's arrest was supported by at least arguable probable cause. Because plaintiff was arrested pursuant to a valid arrest warrant issued by a court with jurisdiction over the matter, I will grant summary judgment in defendants' favor on plaintiff's state law false arrest claim.

### *Municipal Liability for False Arrest Against City of Wallingford*

Counts One and Two of the complaint allege that the City of Wallingford is liable for false arrest under Section 1983 and under state common law. It is well established that a municipality cannot be held liable pursuant to Section 1983 under a *respondeat superior* theory. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–94 (1978); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). Instead, as the Supreme Court made clear in its landmark decision in *Monell*, a municipality is liable only for its *own* illegal acts. Therefore, a plaintiff must establish that the municipality *itself* had no less than a policy, custom, or practice that was intended to or that was deliberately indifferent to constitutional rights, and that this policy, custom, or practice, actually caused the violation by municipal actors of plaintiff's constitutional rights. *See, e.g.*, *Connick v. Thompson*, 131 S. Ct. 1350, 1359–60 (2011).

One common type of *Monell* claim is a so-called "failure-to-train" claim, which is premised on a theory that a municipality failed to adequately train its employees concerning a relevant constitutional principle. Such a claim will succeed "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

13

In this case, plaintiff raises a *Monell* based on a "failure-to-train" theory. He contends that the City of Wallingford failed to adequately train its police officers concerning proper investigation procedures, such as interviewing witnesses, identifying suspects, making probable cause determinations, and preparing warrant applications. There is no evidentiary support for this claim. It is undisputed that Garcia, DiCocco, and all other Wallingford police officers have completed training established by state standards, and that Wallingford police officers are required to complete periodic re-certification training concerning scene investigation, the law governing searches and seizures, and numerous other topics. There is no evidence to suggest that this training regimen is inadequate—let alone that it is deliberately indifferent in the constitutional sense.

Plaintiff makes much of the fact that Garcia could not remember at his deposition the particular training he received about witness interviewing, photographic arrays, or investigation of a criminal complaint. But this in and of itself does not provide a basis for holding the City of Wallingford liable under Section 1983. As the Supreme Court has explained, the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91; *see also Jenkins v. City of New York*, 478 F.3d 76, 95 (2d Cir. 2007) ("A training program is not inadequate merely because a few of its graduates deviate from what they were taught.").

Similarly unpersuasive is plaintiff's argument that the Court should infer the inadequacy of Garcia's training from the fact that Garcia allegedly violated certain internal police department policies during his investigation. Section 1983 is a vehicle for redress when one's constitutional rights are violated; it does not provide a private cause of action to sue a

14

municipality that violates its own internal policies. *See Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("[I]t [is] obvious that the Fourth Amendment's meaning d[oes] not change with local law enforcement practices—even practices set by rule."); *Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 489 (S.D.N.Y. 2010) (noting that "a breach of department policy does not by itself constitute a constitutional violation").

Nor is there a genuine issue of fact remaining to establish the City of Wallingford's liability under state common law for false arrest. As discussed above, plaintiff's false arrest claims fail on their merits against each of the individual defendants, and so the City of Wallingford cannot be liable at common law for false arrest.

Because the record is devoid of any evidence indicating the existence of a constitutionally deficient training program and because no municipal liability lies for plaintiff's common law claim of false arrest, I will grant defendants' motion for summary judgment on the his Section 1983 and false arrest claims against the City of Wallingford.

### *Emotional Distress Claims*

Lastly, plaintiff raises two state common law tort claims for negligent infliction of emotional distress and intentional infliction of emotional distress. The standards for both of these claims are well established as a matter of Connecticut tort law.

In order to prevail on a negligent infliction of emotional distress claim, a plaintiff must prove the following elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003). It is readily apparent that plaintiff cannot satisfy these

elements. Even assuming that defendants' conduct created a risk of causing plaintiff emotional distress, it cannot be said that the risk here was unreasonable. Garcia engaged in a constitutionally reasonable police investigation, and he drafted an arrest warrant application when he believed that plaintiff had committed a crime. "While such conduct may involve a risk of causing emotional distress to the person who is the subject of the criminal prosecution, that risk cannot be characterized as unreasonable in light of the importance to our society of the prosecution of those who violate its criminal laws." *Silberberg v. Lynberg*, 186 F. Supp. 2d 157, 177 (D. Conn. 2002).

In any event, the evidentiary record provides no basis to conclude that the defendants' conduct actually caused plaintiff emotional distress—let alone severe emotional distress of the kind that might result in illness or bodily harm. Plaintiff's negligent infliction of emotional distress claim fails.

Plaintiff's claim for intentional infliction of emotional distress fares no better. This type of claim requires evidence that:

> (1) that the actor intended to inflict emotional distress or that he knew or should
> have known that emotional distress was the likely result of his conduct; (2) that
> the conduct was extreme and outrageous; (3) that the defendant's conduct was the
> cause of the plaintiff's distress; and (4) that the emotional distress sustained by the
> plaintiff was severe.

*Gillians v. Vivanco–Small*, 128 Conn. App. 207, 211, 15 A.3d 1200 (2011) (internal quotation marks and citation omitted). The standard for what amounts to "extreme and outrageous" conduct is stringent: liability "requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 267, 597 A.2d 807

(1991); *see also Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000) (same).

Here, no reasonable jury could conclude that defendants engaged in outrageous conduct intended to inflict emotional distress on plaintiff. No evidence suggests that plaintiff became a suspect in the investigation for any improper purpose. The undisputed evidence simply shows that defendants believed plaintiff had stolen a vacuum cleaner, and they so told a state court judge in a warrant application. At least arguable probable cause supported plaintiff's arrest. These facts would not warrant a jury verdict in plaintiff's favor on his intentional infliction of emotional distress claim.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Doc. #62) is GRANTED. Judgment shall enter in defendants' favor on all claims. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 13th day of August 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge